# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CHARLES DAVIS, | ) | CASE NO: 1:03 CV 2075 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| vs. | ) | |
| | ) | |
| CITY OF EAST CLEVELAND, OHIO | ) | |
| *et al.* | ) | **ORDER** |
| Defendants. | ) | |

Defendants Randy Hicks, John Bechtel, Jerome Johnson, Bridget Bradley-Burns, Davida Taylor, Paula Robinson, and Earnest Stanford filed a Motion For Summary Judgment on September 23, 2005. (Doc. No. 86).  Though named as defendants in the initial complaint, Plaintiff's claims against the City of East Cleveland, the East Cleveland Police Department ("ECPD"), Huron Hospital Emergency Department, and two emergency medical technicians were dismissed by Judge Kathleen O'Malley. (Doc. No. 5).  *Pro se* Plaintiff Charles Davis (hereinafter "Davis"), despite being given numerous extensions of time, has not filed a brief in opposition to Defendants' motion for summary judgment.  Nevertheless, it remains Defendants' burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor on all of Davis's claims.  For the reasons set forth below, the motion for summary judgment is GRANTED in part and DENIED in part.  Summary judgment is granted in

favor of Defendants Bechtel, Johnson, Bradley-Burns, Taylor, and Robinson on all of Davis's claims.  The following claims remain: (1) § 1983 claim alleging Fourth Amendment violation for excessive use of force during Davis's arrest against Defendant Hicks; (2) § 1983 action alleging Fourteenth Amendment violation stemming from the allegation of excessive force during Davis's detention against Defendants Hicks and Stanford only; (3) conspiracy to violate Davis's constitutional rights under § 1983 against Defendants Hicks and Stanford; and (4) an assault and battery action against Defendants Hicks and Stanford.

## I.  SUMMARY OF FACTS

On the night of October 22, 2002, Davis was apprehended and arrested by Defendants Hicks and Bechtel, both police officers for the City of East Cleveland.  Hicks and Bechtel responded to a burglary in progress call made by a resident who came upon an unknown African American male in his home. (Aff. of John Bechtel at ¶¶6-7, attached to Defs.' Mot. For Summ. J. at App. B; Aff. of Randy Hicks at ¶6 attached to Defs.' Mot. For Summ. J. at App. C). Defendants Bechtel and Hicks claim that they were driving a marked police car and were in uniform that night. (Aff. of Bechtel at ¶3; Aff. of Hicks at ¶3).  According to Davis, he had just exited his car, which was suffering from mechanical problems, when a vehicle approached him. (Davis Depo. at 97).  Davis stated that he could not identify the vehicle as a police cruiser due to the blinding brightness of the headlights, nor could he identify the individual who exited the vehicle as all he saw was a silhouette. (Davis Depo. at 97-99).

Davis further averred that he turned and ran after an individual exited the vehicle and yelled something akin to "hey mother-f--ker." (Davis Depo. at 99).  Defendants Bechtel and Hicks, to the contrary, stated that they yelled "police stop." (Aff. of Bechtel at ¶7; Aff. of Hicks

2

at ¶7).  Davis said that he was tackled to the ground before he could take more than a few steps.

(Davis Depo. at 99).  After being tackled, Davis alleges that, while he was on the ground face-

down with Defendant Bechtel on top of him, he "struggled" and asked why Defendants were

being so physical with him. (Davis Depo. at 102).  Davis stated that he did not know Defendants

Hicks and Bechtel were police officers until they said so while he was face down on the ground.

(Davis Depo. at 102-103).  Davis then alleges that he was kicked in the ribs at least three or four

times by Defendant Hicks. (Davis Depo. at 102; 1st Compl. at 3).[1]  Defendants, however, allege

that Davis fell on a tree stump in the back yard while fleeing. (Aff. of Bechtel at ¶7).  Davis

admits that he was never assaulted or beaten by Defendant Bechtel. (Davis Depo. at 121; 1st Req.

For Admis. at ¶6, attached to Defs.' Mot. For Summ. J. at App. E).

Davis stated that he requested to be taken to the hospital while being transported in the

police cruiser the night of October 22, 2002, but that Defendant Hicks declined to do so. (Davis

Depo. at 108, 112).  Instead, Davis was transported to the East Cleveland Police Station after

first being driven to the home where the burglary occurred. (Aff. of Bechtel at ¶¶8-9).

Defendant Bechtel further stated that Davis did not complain of any injuries resulting from his

apprehension and arrest. (Aff. of Bechtel at ¶10).  At the police station, Davis declined to

---

[1] Both Davis's third amended complaint (Doc No. 66) and his original complaint (Doc No. 1), which is incorporated into the third one, will be treated as affidavits satisfying Fed. Civ. R. 56(e).  Pursuant to 28 U.S.C. § 1746, written declarations made under "penalty of perjury" are permissible in lieu of sworn affidavits subscribed to before public notaries. *See Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992)  Moreover, the legislative history of the statute explicitly states that "the purpose of this legislation is to permit the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits." *Id. quoting* H.R. Rep. No. 1616, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.C.C.A.N. 5644.  Davis's original form complaint as well as his third amended complaint contains language declaring "under penalty of perjury that the foregoing is true and correct."  This language is identical to language contained in 28 U.S.C. § 1746.

identify himself and gave his brother's name, "Kevin Davis," as his own. (Aff. of Hicks at ¶¶11-12; Davis Depo. at 118).

While at the police station, Davis alleges that Defendant Hicks and Defendant Stanford, also a police officer, dropped Davis head-first onto the floor and then proceeded to strike him on the head and choke him. (3rd Compl. at ¶12). Davis alleges that he had "a couple of lumps on [his] forehead and on the back of [his] head from when they was [sic] punching [him] in the forehead and was hitting off the floor." (Davis Depo. at 127). Afterwards, Davis was placed in a holding cell where a brief verbal confrontation occurred between him and another detainee named Andre Block. (Davis Depo. at 130-136, 191, 226; Aff. of Paula Robinson at ¶7, attached to Defs.' Mot. For Summ. J. at App. D). Davis stated that the police officers then removed him from that cell and placed him in another cell with a detainee named Ira Pickens. (Davis Depo. at 136-137). Davis testified that he sat at the end of Pickens's bunk and explained that he had been beaten up by the police. (Davis Depo. at 137). Davis claims that Defendants Stanford, Hicks, Johnson, Burns, and Bechtel incited Pickens to assault Davis and promised Pickens that he would not be punished for doing so. (1st Compl. at 4; 3rd Compl. at ¶¶13-14; Davis Depo. at 224-226).[2] Specifically, Davis testified that the officers said "ain't [sic] nothing wrong with him. Get him up off your bunk." (Davis Depo. at 138). According to Davis, Pickens then grabbed him by his neck and pulled him off the bunk. (Davis Depo. at 139). Davis testified that before any fight ensued and before any blows were exchanged, Defendants Burns and Hicks opened the doors and pulled him out. (Davis Depo. at 139-141; *see also* Robinson Aff. at ¶8). Davis claims

---

[2] Defendant Burns is a corrections officer while Defendant Johnson is a lieutenant with the East Cleveland Police Department.

4

that Defendant Burns grabbed him by the neck and slammed him to the floor. (Davis Depo. at 142).  Davis was handcuffed and had restraints placed on his ankles and placed in the showering area for what Davis estimates to be forty-five (45) minutes. (Hicks Aff. at ¶14; Robinson Aff. at ¶8; 1st Compl. at 4).  Davis admits that he was never assaulted or beaten by Defendant Johnson or Defendant Taylor, a corrections officer. (1st Req. For Admis. at ¶¶5, 7).

The East Cleveland Police Department contacted the EMS at 11:45 p.m. to attend to Davis the same night he was arrested . (*See* EMS Incident Report attached to Davis Depo. as Ex. K; 2nd Req. For Admis. at ¶1, attached to Defs.' Mot. For Summ. J. at App. F).  Davis, while admitting that the EMS technicians asked him a series of questions, denies that he was provided with medical care. (2nd Req. For Admis. at ¶2.  The EMS Incident report states that Davis was complaining of flank pain from being kicked in the ribs earlier that night.  (EMS Incident Report attached to Davis Depo. as Ex. K).  Davis denies refusing to cooperate with the EMS and denies refusing medical assistance. (2nd Req. For Admis. at ¶¶9, 11).  According to Davis, Defendant Robinson, a police officer, told the EMS technicians that he was faking his injuries.  Defendant Robinson witnessed the EMS report.  Davis also admitted that he was never beaten or assaulted by Defendant Robinson. (2nd Req. For Admis. at ¶5).

Davis admits that he was never diagnosed with a severe illness during his detention at the East Cleveland Police Department. (3rd Req. For Admis. at ¶11).  The medical records from October 30, 2002, seven days after the arrest, indicate that Davis was seen for "contusion of the ribs[,] costochondritis 2nd [degree] to possible costochondrial subluxation." (Davis Depo. at Ex. L).  On November 4, 2002, Davis told medical staff at the Cuyahoga County Corrections Center that he did not have any bruises, abrasions, lacerations, wounds, cuts or scars on his body and

5

that he only had a rib injury. (2ⁿᵈ Req. For Admis. at ¶¶15-16).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party can meet this burden in two ways: by presenting sufficient evidence to indicate there is no genuine issue of material fact; or by arguing the non-moving party, after adequate time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may rely on depositions, answers to interrogatories, and the like, to demonstrate that the non-moving party has no evidence to prove his case and hence that there can be no factual dispute. *Id.* at 328 (White, J., concurring). However, "it is not enough to move for summary judgment ... with a conclusory assertion that the [non-moving party] has no evidence to prove his case." *Id.*

Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *See Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6ᵗʰ Cir. 1995). The trial court has no "duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6ᵗʰ Cir. 1989). That is, the nonmoving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) *citing In re Morris*, 260 F.3d 654, 665 (6ᵗʰ Cir. 2001). The lack of such a response by the nonmoving

6

party may result in an automatic grant of summary judgment. *See Reeves v. Fox Television Network*, 983 F. Supp. 703, 709 (N.D. Ohio 1997).

In assessing the merits of the motion, a Court should "draw all reasonable inferences in favor of the nonmoving party." *Joostberns v. United Parcel Servs., Inc.*, 2006 U.S. App. LEXIS 533 at *8 (6th Cir. 2006). In addition, the Court "does not weigh the evidence or make credibility determinations." *Id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). In other words, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251.

### III. ANALYSIS

**A.      Qualified Immunity - Standard**.

All Defendants have asserted a qualified immunity defense against all of Davis's federal claims. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Gross v. Sizemore*, 1996 U.S. App. LEXIS 33256 at *3 (6th Cir. 1996) ("In suits brought under § 1983, qualified immunity protects those police officers 'whose conduct does not violate clearly established statutory or constitutional rights.'") *quoting Kelm v. Hyatt*, 44 F.3d 415, 421 (6th Cir. 1995). A plaintiff bears the burden of defeating qualified immunity, which is a legal issue to be decided by the court. *See Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999).

7

In *Saucier v. Katz*, the Supreme Court set forth a two part test to determine whether a government official is entitled to qualified immunity. 533 U.S. 194, 201 (2001)  First, a court must consider a threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier*, 533 U.S. at 201.  If the court finds a constitutional violation did occur, "the next, sequential step is to ask whether the right was clearly established."  *Id.*  This second step must consider the specific context of the case, not simply rely upon a broad general proposition.  *Id.*  A clearly established right must have sufficiently clear contours. *Id.*; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  However, such requirement does not narrow the scope of inquiry to the point that "the very action in question has been held unlawful; it . . . mean[s] . . . that in the light of the preexisting law, the illegality of the action must be apparent."  *Linden v. Washtenaw County*, 2006 U.S. App. LEXIS 594, 33-34 (6th Cir. 2006) *citing  Danese v. Asman*, 875 F.2d 1239, 1242 (6th Cir. 1989).

Though the "objective reasonableness standard" employed in evaluating excessive force claims and the "reasonable officer" inquiry employed in evaluating a defense of qualified immunity may sound similar, "the two standards are not coterminous." *Wilkey*, 43 Fed. Appx. at 930; *cf. Kostrzewa v. City of Troy*, 247 F.3d 633, 642 (6th Cir. 2001) ("[I]f there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable officer would have known such conduct was wrongful.")

Where the Court finds a potentially viable federal claim exists, it will examine whether Defendants are entitled to qualified immunity with respect to that particular claim.

**B.**     **Excessive Use of Force During Arrest Under in Violation of 42 U.S.C. § 1983**.

     **1.**     **Constitutional violation.**

Davis has alleged that excessive force was used during his arrest and apprehension for suspicion of burglary on October 22, 2002.  All testimony of record, including that of Davis, indicates that only Defendants Hicks and Bechtel were present and involved in his apprehension. (*See generally* Davis Depo.).  Furthermore, Davis admitted that he "was not assaulted or beaten at anytime by Defendant John Bechtel while in the care and custody of the ECPD." (Defs.' First Set of Req. For Admis. at 6; *see also* Davis Depo. at 102-105).  Therefore, Davis has no viable federal claim against any defendant, save for Hicks, with respect to his excessive force claim stemming from his actual arrest and apprehension.

In analyzing an excessive force claim, "courts must identify the specific constitutional right allegedly infringed by the challenged application of force and then judge the claim by reference to the specific constitutional standard which governs that right." *Graham v. Connor*, 490 U.S. 386 (1989).  Claims that police officers have employed excessive force during an arrest, investigatory stop, or other "seizure" of a citizen are "most properly characterized as invoking the protections of the Fourth Amendment." *Id*.  The Sixth Circuit has stated that "[t]he law as to excessive force has been long-settled, and [an officer] may not advance a claim that he did not know the force he could use must be reasonable." *Kain v. Nesbitt*, 156 F.3d 669, 673 (6th Cir. 1998).

Under the Fourth Amendment, "[d]etermining whether the force used to effect a particular seizure is reasonable ... requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing

9

governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted); *accord Wilkey v. Argo*, 43 Fed. Appx. 925, 928 (6ᵗʰ Cir. 2002).  Such an analysis requires the Court to be mindful of the peculiar facts and circumstances of each case and to focus on such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

The Sixth Circuit has held that "[w]here factual disputes exist as to [the above] considerations, summary judgment is not appropriate." *Wilkey*, 43 Fed. Appx. at 928 *citing Kain*, 156 F.3d at 673 ("If plaintiff's version as to the nature and degree of force used is credited, which the district court failed to do, a jury question is created as to whether the force used was excessive."); *see also Santos v. Gates*, 287 F.3d 846, 855 (9ᵗʰ Cir. 2002) ("In light of the factual disputes regarding the amount of force used, the circumstances under which it was applied, and the extent of the plaintiff's injuries, the question is properly for the jury whether the force applied by the officers was objectively reasonable under the totality of the circumstances."); *Breen v. Garrison*, 169 F.3d 152, 153 (2ⁿᵈ Cir. 1999) (per curiam) ("The issue of excessive force also was for the jury, whose unique task it was to determine the amount of force used, the injuries suffered, and the objective reasonableness of the officer's conduct.").  The key inquiry is whether an officer's use of force is "objectively reasonable" from the perspective of a "reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396-97.

Defendant Hicks has testified that he did not "utilize any excessive or unreasonable force against Davis."  (Aff. of Hicks at ¶5).  Hicks's conclusory statement that any force used was

objectively reasonable is of little or no value to the Court.  Hicks fails to proffer a meaningful narrative of the events that transpired during the arrest.  According to Hicks, he and Defendant Bechtel chased Davis into a yard where Davis tripped over a tree stump. (Aff. of Hicks at ¶7).  Hicks then avers that Davis was handcuffed and placed in a patrol car. (Aff. of Hicks at ¶8).  Hicks's affidavit is silent as to whether Davis was resistant or combative, and it does not give any description as to what force, if any, was used to subdue Davis.[3]  At his deposition, Davis testified that he was first tackled by Defendant Bechtel, who pinned him face-down to the ground by pressing his forearm against the back of Davis's neck.  Davis stated that was the first time he was informed that Bechtel was a police officer.  Davis then claims that while he was face down on the ground with Bechtel on top of him, Defendant Hicks ran over and kicked him in the ribs three or four times.

Viewing the facts in the light most favorable to Davis, a jury reasonably could conclude that Defendant Bechtel had effectively subdued Davis to the point where he no longer posed a threat to the officers or the public.  A jury also could reasonably conclude that Hicks's kicks to Davis's ribs, inflicted at a time when Davis was no longer a threat, constituted a gratuitous application of force upon Davis's person and that such force, therefore, was not objectively reasonable under the circumstances.

## 2. Qualified immunity defense.

Defendant Hicks argues that he is entitled to qualified immunity.  Under the first prong of

---

[3] Defendant Bechtel, the only other eye-witness to the arrest other than Davis and Hicks, also stated that he did not use any excessive or unreasonable force. (Aff. of Bechtel at ¶5).  Bechtel makes no characterization as to the amount of force Hicks used.  Bechtel, like Hicks, offers no clear description of the manner in which Davis was apprehended.

the qualified immunity test, the Court finds that, taken in the light most favorable to Davis, his verified factual allegations are sufficient to establish that Defendant Hicks violated his Fourth Amendment right to be free from the excessive use of force during an arrest.

In *Phelps v. Coy*, the Sixth Circuit held that an officer who hit a handcuffed individual twice in the face and then banged his head to the floor three times employed unreasonable force despite the fact that the officer believed the handcuffed suspect had tried to kick one of his fellow officers. 286 F.3d 295, 301-302 ("no governmental interest in continuing to beat [suspect] after he had been neutralized, nor could a reasonable officer have thought there was.") *citing Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994) (use of force after suspect incapacitated by mace would be excessive as a matter of law).  In the present case, construing the evidence in favor of Davis, this Court cannot conclude that Hicks's kicks to Davis's ribs were reasonable as a matter of law, especially after Bechtel already had tackled Davis and pinned him to the ground face down.

In determining whether a constitutional right is clearly established, the trial court must look first to decisions of the Supreme Court, then to decisions of the Sixth Circuit and other courts within the Circuit, and finally to decisions of other Circuits.  *See Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991).  The right to be free from the use of excessive force against one's person is clearly established.  *See, e.g., Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994). More specifically, "it is well established that a police officer cannot continue to use force once a reasonable officer would conclude that force is no longer justified by the circumstances." *Burden v. Carroll*, 108 Fed. Appx. 291, 294 (6th Cir. 2004).

A suspect, such as Davis, has a clearly established right to be free from the gratuitous

12

application of force against his person once he has been neutralized.  Although the question of

whether Davis was sufficiently neutralized by Defendant Bechtel may be subject to dispute, such

a dispute is purely factual and should be decided by the jury.  Therefore, Defendant Hicks's

motion for summary judgment on Davis's claim alleging excessive use of force during the arrest

is DENIED.  Davis's claim of excessive use of force during the arrest is dismissed with respect

to all other Defendants.

**C.      Failure to Provide Medical Care as a Violation of 42 U.S.C. § 1983**.

Davis claims that he required medical attention for injuries sustained during his arrest,

especially the injuries to his ribs.  Defendants' alleged indifference to his medical needs occurred

while Davis was a pretrial detainee.  Pretrial detainees, despite not having been convicted of any

crimes, enjoy "at least those constitutional rights that we have held are enjoyed by convicted

prisoners."  *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Graham*, 490 U.S. at 395, n. 10;

*see also Phelps v. Coy*, 286 F.3d 295, 300 (6th Cir. 2002) ("if a plaintiff is not in a situation

where his rights are governed by the particular provisions of the Fourth or Eighth Amendments,

the more generally applicable due process clause of the Fourteenth Amendment still provides the

individual some protection against physical abuse by officials.").

The United States Supreme Court has held that, "deliberate indifference to serious

medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed

by the Eighth Amendment ... [regardless of] whether the indifference is manifested by prison

doctors in their response to the prisoner's needs or by prison guards in intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once prescribed."

*Estelle v. Gamble*, 429 U.S. 97, 104-105 (U.S. 1976).  According to the Sixth Circuit, "[p]rison

13

officials violate the Eighth Amendment (which applies to persons who have been convicted) and the Due Process Clause of the Fourteenth Amendment (which applies to pre-trial detainees) when they are deliberately indifferent to a substantial risk of serious harm to an inmate." *Townsend v. City of Morehead*, No. 99-5575, 2000 WL 282475, at **2 (6th Cir. March 9, 2000); *accord Rich v. Mayfield Heights*, 955 F.2d 1092, 1096 (6th Cir. 1992) (right to receive medical care also applies to pretrial detainees); *Roberts v. Troy*, 773 F.2d 720, 723 (6th Cir. 1985) ("pretrial detainee ... was not within the protection of the eighth amendment; [but] the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial.")

Nevertheless, prison officials cannot be found liable for denying an inmate, or in this case a pretrial detainee, humane conditions of confinement unless: (1) the official knows of and disregards an excessive risk to inmate health or safety; (2) the official is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and (3) the official must draw the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994). According to the Sixth Circuit, "under *Farmer*, such a claim has both an objective and a subjective component [and] [t]he objective component requires the existence of a 'sufficiently serious' medical need." *Estate of Harbin v. City of Detroit*, 2005 U.S. App. LEXIS 19149, *12-13 (6th Cir. 2005) (citations omitted).  The objective component of deliberate indifference requires Davis to demonstrate that the alleged deprivation was sufficiently serious, thereby posing a substantial risk of serious harm.  *See, e.g. Garretson v. City of Madison Heights*, 407 F.3d 789, 796-97 (6th Cir. 2005) ("An incarcerated plaintiff who complains that a delay in

14

medical treatment violates her constitutional rights must present 'verifying medical evidence' to establish the detrimental effect of the delay."); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001); *Gaudreault v. Salem*, 923 F.2d 203, 208-209 (1st Cir. 1990) ("the 'seriousness' of an inmate's needs may also be determined by reference to the effect of the delay of treatment").

There is no dispute that Defendants contacted the EMS the very same night Davis was arrested.  It is also undisputed that the EMS came to the police station and examined Davis. Although Davis claims he was not actually given medical care and that Defendant Robinson told the EMS crew that Davis was faking his injuries, there is no evidence that any of the Defendants prevented Davis from receiving medical care.  If the EMS crew failed to provide adequate medical care or was negligent in some manner, such failure cannot be attributed to any of the remaining Defendants in this case.  Thus, Davis's claim that his Fourteenth Amendment right was violated because Defendants deliberately ignored a serious medical injury or condition is untenable.

The inadequacy of Davis's claim is made even more apparent by the fact that there is nothing in the record to suggest that his injuries were exacerbated by the alleged delay in providing treatment.  The record shows that seven days after he was first examined, Davis was seen only for bruising and inflammation of the tissue in his ribs.  Less than a week after this second examination, Davis reported to the Cuyahoga County Corrections Center that he did not have any bruises, abrasions, lacerations, wounds, cuts or scars on his body and that he only had a rib injury.  Davis has not presented any verifying medical evidence to establish the detrimental effect of a delay in treatment.  Therefore, summary judgment is granted in favor of all Defendants with respect to Davis's claim that his constitutional rights were violated by either a

15

failure or delay in the provision of medical care.

**D.      Excessive Use of Force During Pretrial Detention and Inciting Detainees to Harm Davis.**

Davis's bases some of his claims on Defendants' conduct occurring during Davis's detention at the East Cleveland city jail.  Specifically, Davis has alleged the following: (1) Defendants Stanford and Hicks dropped him on his head, choked him, and struck him in the face; (2) all Defendants incited another detainee named Ira Pickens to assault Davis; (3) Defendant Burns grabbed Davis by the neck and slammed him to the floor as he was being removed from Pickens's cell; and (4) Defendants Burns, Johnson, Bechtel and Hicks cuffed Davis's feet and ankles and left him in the shower area.  Defendants generally deny physically beating, assaulting, or harming Davis in any manner.  They allege that Defendants Burns and Hicks had to remove Davis from the cell to break up the physical altercation between Davis and Pickens.

Sixth Circuit precedent holds that "pretrial detainees held in the jail are protected under the Fourteenth Amendment, which provides that 'a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) *quoting Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *accord Batey v. County of Allegan*, 2002 U.S. Dist. LEXIS 4918 at *14 (6th Cir. 2002) (Sixth Circuit applies the Eighth Amendment's standard to excessive force claims of pretrial detainees).  The Sixth Circuit "has made clear that such detainees are thus entitled to the same Eighth Amendment rights as other inmates." *Id.* ("conditions of pretrial detention that implicate only the protection against deprivation of liberty without the due process of law, and no other express guarantee of

16

the Constitution, are constitutional if they do not 'amount to punishment of the detainee.'");

*Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985); *cf. Johnson-El v. Schoemehl*, 878 F.2d

1043, 1048 (8th Cir. 1989) ("confinement conditions [of pretrial detainees] are analyzed under

the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth

Amendment's 'cruel and unusual punishment' standard which is used for convicted prisoners,

[and] the injuries detainees suffer must be necessarily incident to administrative interests in

safety, security and efficiency.")

In *Caldwell v. Moore*, the Sixth Circuit observed that "whenever prison officials stand

accused of using excessive physical force in violation of the Cruel and Unusual Punishments

clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain

or restore discipline, or maliciously and sadistically to cause harm." 968 F.2d 595, 599-600 (6th

Cir. 1992) *citing Hudson v. McMillian*, 503 U.S. 1 (1992); *see also Haynes v. Marshall*, 887

F.2d 700, 703 (6th Cir. 1989).  Three relatively recent Sixth Circuit decisions have found that

"the physical injury suffered [by a plaintiff] must be more than *de minimis* to support an Eighth

Amendment excessive force claim."  *Batey*, 2002 U.S. Dist. LEXIS 4918 at *14; *see also*

*Robinson v. Corrections Corp. of America*, 14 Fed. Appx. 382 (6th Cir. 2001) ("a physical injury

must be more than *de minimis* to support a claim for mental or emotional suffering under the

Eighth Amendment and § 1997e(e)"); *Scott v. Churchill*, 2000 U.S. App. LEXIS 6714 at *8 (6th

Cir. April 6, 2000) ("prisoner must allege that he sustained more than *de minimis* injury in order

to state a viable excessive force claim"); *cf. Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir.

1991) (plaintiff need not have suffered an "actual injury" in order to receive damages for an

Eighth Amendment violation); *Parrish v. Johnson*, 800 F.2d 600, 610 (6th Cir. 1986); *Moore v.*

17

*Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993) (infliction of pain is sufficient to uphold an Eight Amendment claim, but the law "requires that the pain be serious.")

      **1.**      **Actions by Defendants Stanford and Hicks**.

As to Davis's claim that Defendants Stanford and Hicks dropped him on his head, choked him, and struck him in the face resulting in lumps on his head, a reasonable jury could conclude that Defendants were attempting to maliciously punish Davis and that their actions were not a good faith effort to restore discipline in the jail. Whether Davis's injuries are characterized as major or minor, his alleged injuries are sufficient to support his claim. *See Thaddeus-X v. Love*, 2000 U.S. App. LEXIS 11813 at *5 (6th Cir. 2000) ("While a *de minimis* use of force will not support an actionable claim, a plaintiff may recover even if he suffers only minor injury") *citing Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992); *Moore v. Holbrook*, 2 F.3d 697, 700-01 (6th Cir. 1993); *accord Knuckles El v. Ordiway*, 1999 U.S. App. LEXIS 26652 at *5 (6th Cir. 1999),

Furthermore, even if Defendant Stanford did not actually join Defendant Hicks in delivering punches or other blows to Davis's person, a police officer such as Stanford may be liable under § 1983 for nonfeasance if he fails to protect a person from being assaulted by another person, including another police officer. *See, e.g., Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) ("This Circuit has approved the holding of *Byrd*."); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) ("Applying *Bruner* to the prison context, a correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating

18

in the unlawful beating."); *Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973) (per curiam).

Davis has not alleged that any other officer witnessed these actions.  Thus, no Defendant other than Stanford can be held liable for nonfeasance during this alleged assault.  Furthermore, Defendants Hicks and Stanford are not entitled to qualified immunity based on the facts alleged. Not only are Davis's factual allegations sufficient to make out a violation of his constitutional rights, but it is also "well established that a police officer cannot continue to use force once a reasonable officer would conclude that force is no longer justified by the circumstances." *See, e.g., Burden*, 108 Fed. Appx. at 294.  Therefore, the motion for summary judgment of Defendants Hicks and Stanford with respect to Davis's claim alleging excessive use force during this alleged assault is denied.

### 2.    Alleged incitement of detainee Pickens.

The situation is markedly different once Davis was transferred to a holding cell.  Davis alleges in his complaints that all Defendants goaded the other detainee, Pickens, to harm him. However, his verified complaints contain only general and conclusory allegations.  By comparison, Davis's deposition testimony reveals that the various officers told the detainee Pickens that Davis was not, in fact, injured and that Pickens could "get him up off [his] bunk." No reasonable jury could conclude that these statements amount to an explicit incitement of Pickens to do physical and violent harm to Davis's person.  Furthermore, Davis testified in his deposition that Defendants quickly separated the two detainees from one another before any punches or blows were exchanged and before any injury occurred.  As Defendants responded with appropriate haste, any claim for nonfeasance is not viable.  In addition, Davis has not alleged that he sustained even a minor injury or serious pain from the brief altercation with

19

Pickens.  Therefore, the statements made by the various Defendants to Pickens cannot serve as the basis of a claim that Davis's constitutional rights were violated.  As Davis does not have a viable constitutional claim based on these allegations, the Court need not determine whether Defendants are entitled to qualified immunity with respect to this particular claim.  Thus, Defendants' motion for summary judgment is granted with respect to Davis's claims stemming from Defendants' alleged incitement of Pickens.

   **3.**  **Removal of Davis from the cell**.

   Davis also alleges that Defendant Burns came into the cell during the altercation with Pickens and removed Davis from the cell by taking hold of him around the neck.  Davis then alleges that he was "slammed" to the floor outside the cell by Defendant Burns and "hogtied" with shackles and cuffs by Defendants Johnson, Bechtel, and Hicks.  These allegations, absent the pejorative terminology, merely show that Davis was tackled to the floor and placed in handcuffs and ankle restraints.  Restraining a detainee by bringing him to the ground so as to reduce any danger posed by him is a reasonable response and an action that cannot be accomplished with only a modicum of force.  Cuffing a detainee is also reasonable as long as the cuffs are not so restrictive as to cause injury or significant pain.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) ("This circuit has held that the right to be free from excessive force, including 'excessively forceful handcuffing,' is a clearly established right....")  Herein, Davis has not alleged any injury relating to his removal from the cell and handcuffing.  Defendants' actions in response to the altercation/assault, that is separating Davis and Pickens by dragging Davis from the cell and tackling him to the ground constitute a reasonable and good faith attempt to restore order in the jail.  Davis's allegations and deposition testimony in this

regard are insufficient to allege a constitutional violation.

Even if Defendants' statements contributed to the confrontation between Pickens and Davis, the Defendants would have been remiss in their duties if they had allowed the confrontation to escalate into a violent altercation where blows were exchanged.  Indeed, had Defendants failed to intervene in a timely manner, they arguably may have been liable for nonfeasance.  Davis's deposition testimony supports the fact that Defendants' swift action prevented Pickens from inflicting any injury upon Davis.  Defendants' actions in this context were reasonably necessary to discharge their legal duty, even viewed in the light most favorable to Davis as the non-moving party.  As Davis does not have a viable constitutional claim based on these allegations, the Court need not determine whether Defendants are entitled to qualified immunity with respect to this particular claim.  Thus, Defendants' motion for summary judgment is granted with respect to Davis's claims stemming from his removal from the jail cell immediately after the confrontation with Pickens.

### 4. **Detention in the shower area**.

Lastly, Davis alleges that the Defendants cuffed his feet and ankles and left him in the shower area for forty-five minutes.  He does not allege that the officers or guards turned on the shower or that they subjected him to some type of water punishment.  Again, Davis has not alleged even a *de minimis* injury or serious pain from his being handcuffed and left in the shower area.  While Davis has alleged an injury resulting from alleged kicks to his ribs during the arrest, that previously incurred injury does not satisfy the injury component of each and every subsequent constitutional claim made by Davis.  In addition, even if the Court were to find that Defendants' actions amount to a constitutional violation, the right of a pretrial detainee to be free

21

from being placed in restraints for forty-five minutes, if any such right indeed exists, was not clearly established with sufficiently clear contours at the time the events occurred.  Therefore, Defendants would be entitled to qualified immunity.  Therefore, Defendants' motion for summary judgment is granted with respect to Davis's claims stemming from his allegation that he was cuffed and left in the shower area for forty-five minutes.

**E.**    **Conspiracy To Deprive Davis Of His Civil Rights Under 42 U.S.C. §§ 1983, 1985(3)**.

Davis appears to have asserted a cause of action against all the Defendants for a conspiracy to violate his constitutional rights. (Doc. No. 66, ¶¶12-15).  Davis does not specify whether he is alleging a conspiracy to violate rights protected by § 1983 or whether he is alleging a race-based or class-based conspiracy under § 1985.

To prove a claim under 42 U.S.C. § 1985, a plaintiff must prove (1) a conspiracy involving two or more persons for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws; (2) an act occurred in furtherance of that conspiracy that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen; and (3) the conspiracy was motivated by a racial, or otherwise class-based, invidiously discriminatory animus.  *See United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-829 (1983); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-268 (U.S. 1993) *citing Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Carpenters v. Scott*, 463 U.S. 825, 833 (1983); *see also Radvansky v. Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).  Review of the Complaint and Davis's deposition has not uncovered even a conclusory allegation that racial, or otherwise class-based, invidiously discriminatory animus motivated Defendants' actions.

22

Therefore, the Court will analyze Davis's conspiracy claim as an allegation that Defendants, in violation of § 1983, conspired to deprive him of his rights, privileges, and/or immunities secured by the nation's laws and the Constitution.

The Sixth Circuit has observed that "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983." *Jackson v. Madery*, 2005 U.S. App. LEXIS 24684 (6th Cir. 2005) *quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  Because a plaintiff rarely will be able to offer direct evidence in a conspiracy case of an express agreement among the conspirators, circumstantial evidence may provide adequate proof of conspiracy.  *See, e .g., Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000).  In *Coon v. Froehlich*, 573 F. Supp. 918, 922 (S.D. Ohio 1983), the court for the Southern District of Ohio stated as follows:

> A civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damage.'" In order to prove the existence of a civil conspiracy, *a plaintiff is not required to provide direct evidence of the agreement between the conspirators*; "*circumstantial evidence may provide adequate proof of conspiracy*."  Absent the testimony of a co-conspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist. Thus, the question whether an agreement exists should *not* be taken from the jury in a civil conspiracy case *so long as there is a possibility that the jury can "infer from the circumstances [that the alleged conspirators] had a 'meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives*. (citations omitted) (emphasis added).

*Coon*, 573 F. Supp. at 922 *quoting Hampton v. Hanrahan*, 600 F.2d 600, 620-621 (7th Cir. 1979).

It is not necessary that all conspirators reach an express agreement in order to prove the existence of a civil conspiracy, nor does every conspirator have to know "all of the details of the

illegal plan or all of the participants involved."  *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir.

1985); *accord Memphis Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d

898, 905 (6th Cir. 2004).  Davis's Third Amended Complaint, which incorporates his original

Complaint, does not reveal any allegation of conspiracy between Defendants Hicks and Bechtel

to violate his constitutional rights during his arrest.  Davis, however, does allege that Defendants

Stanford and Hicks conspired to assault him at the police station when they allegedly dropped

him on his head, choked him, and struck him in the face. The Court finds that Davis's deposition

testimony in this matter and his sworn Complaints made under penalty of perjury provide

sufficient evidence to withstand Defendant Hick's and Defendant Stanford's motion for

summary judgment.  The alleged blows delivered to Davis's person are sufficient to satisfy the

"overt act" requirement.  While review of the record has not uncovered any direct evidence of an

express agreement between Defendants to deprive Davis of his civil rights, the factual

circumstances alleged by Davis are sufficient to support a reasonable inference that Defendants

had a "meeting of the minds" and a general intent to accomplish the general conspiratorial

objective of depriving Davis of his rights.  Therefore, Defendant Hick's and Defendant

Stanford's motions for summary judgment regarding Davis's § 1983 conspiracy claim are

DENIED.

Davis also alleges that the other Defendants conspired to incite detainee Pickens to harm

him and that they conspired to assault him during his removal from the cell. *See Spadafore v.*

*Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (even if allegations that defendants intentionally filed

false affidavits are true, "no evidence from which to infer that the defendants acted in concert"

was presented, circumstantial or otherwise, to suggest defendants had a plan when they made the

24

allegedly false statements).  Significantly, the Court already found that no viable cause of action exists from the events that transpired from the time Davis was placed in the holding cell with Pickens up to and including the time he was cuffed and placed in the shower area.

In the absence of law directly on point from the Sixth Circuit, this Court looks to other federal decisions for guidance.  These federal decisions hold that a § 1983 conspiracy allegation "does not give rise to liability unless there is an actual deprivation of civil rights." *Menefield v. Helsel*, 1996 U.S. App. LEXIS 5551 at *19 (9th Cir. 1996) ("There is no such thing as a conspiracy to commit lawful conduct.") *citing Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989); *Singer v. Wadman*, 595 F. Supp. 188 (D. Utah 1982), *aff'd*, 745 F.2d 606 (10th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985).  As there is no underlying constitutional violation involved in the removal of Davis from Pickens's cell, in the cuffing of Davis, or the placement of Davis in the shower area, a conspiracy claim based on such conduct must fail. Therefore, the motion for summary judgment of Defendants Burns, Johnson, Bechtel, Taylor and Robinson as to Davis's § 1983 conspiracy claim is GRANTED

**F.     Assault and Battery Under Ohio Law**.

**1.     Admissions**.

Because Davis has admitted that Defendants Taylor, Bechtel, Robinson and Johnson never assaulted or beat him during his arrest or detention, summary judgment is GRANTED in favor of these Defendants on Davis's assault and battery claim.

**2.     Self Defense**.

The remaining Defendants, Hicks, Stanford, and Burns, have raised the defense of self-defense.  To establish self-defense, each Defendant must allege facts demonstrating the

following elements: "(1) that he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that he did not violate any duty to retreat or avoid the danger." *State Farm Fire & Cas. Co. v. Totarella*, 2003-Ohio-5229 at ¶25, 2003 Ohio App. LEXIS 4680 (Ohio Ct. App. 2003) *citing State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus (Ohio 1979). The burden of proving an affirmative defense is on the Defendants. *See, e.g., Goldfuss v. Davidson*, 79 Ohio St. 3d 116, 124, 679 N.E.2d 1099 (Ohio 1997); *Pravitskyy v. Halczysak*, 2003-Ohio-7057 at ¶19, 2003 Ohio App. LEXIS 6420 (Ohio Ct. App. 2003). For a party to prevail at the summary judgment stage on an affirmative defense, the moving party must demonstrate an absence of genuine disputes over material facts. Davis's deposition testimony denies being belligerent throughout his arrest and detention. Davis's testimony, therefore, creates a dispute over whether Defendants had a good faith belief that they or others were in imminent danger of death or great bodily harm. The motion for summary judgment of the remaining Defendants (Hicks, Stanford and Burns) regarding the assault and battery claim on the basis of self-defense is DENIED.

      **3.     Statutory Immunity**.

      Defendants also assert that they are entitled to summary judgment on Davis's assault and battery claims because they are immune under Ohio R.C. § 2744. The Court finds there is no genuine dispute that Defendants were performing a "governmental function" under Ohio R.C. § 2744.01(C)(2)(a). According to Ohio law, employees of a political subdivision, such as the City of East Cleveland, are immune from liability when carrying out a "governmental function"

26

unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."  R.C. § 2744.03(A)(6)(b).  However, if any of these exceptions are applicable, the employee of a political subdivision is not entitled to immunity.

"Malice" has been defined as "the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Cook v. City of Cincinnati*, 103 Ohio App. 3d 80, 90-91 (Ohio Ct. App. 1995) *citing Jackson v. Butler Cty. Bd. of Comm'rs.*, 76 Ohio App. 3d 448, 602 N.E.2d 363 (Ohio Ct. App. 1991). "Bad faith," on the other hand, is defined as "a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." *Id.*  "Wanton misconduct" is characterized by "the failure to exercise any care whatsoever."  *Cook*, 103 Ohio App. 3d at 90-91 *citing Fabrey v. McDonald Police Dept.*, 70 Ohio St. 3d 351, 356, 639 N.E.2d 31, 35 (Ohio 1994) ("mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor."); *Hawkins v. Ivy*, 50 Ohio St. 2d 114, 363 N.E.2d 367 (Ohio 1977).  "Reckless conduct" occurs when a person "does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially  greater than that which is necessary to make his conduct negligent." *Thompson v. McNeill*, 53 Ohio St. 3d 102, 104-105 (Ohio 1990).

Defendants make the conclusory statement that "a reasonable jury could not conclude that any of the East Cleveland Defendants acted with malice or recklessness" during Davis's

27

arrest or detention.  (*See* Defs' Mot. For Summ. J. at 26).  Given the verified statements and deposition testimony of Davis, the position of Defendants Hicks and Stanford is untenable. Davis, among a myriad of allegations, testified in his deposition that Defendants Hicks and Stanford dropped him on his head, choked him, and struck him in the face despite Davis's statement that he never offered any physical resistance.  A reasonable jury could find Davis's testimony credible.  Such testimony, coupled with other alleged circumstances, is capable of demonstrating malice, bad faith, wanton misconduct *or* reckless conduct.  Therefore, Defendants Hicks and Stanford are not entitled to statutory immunity on Davis's assault and battery claim.

Defendant Burns, on the other hand, removed Davis from his cell as an altercation began between Davis and Pickens.  Burns forcibly removed Davis by dragging him out of the cell by the neck.  Burns then tackled or "slammed" Davis to the floor.  Because Defendant Burns has a duty to keep detainees from harming one another, a jury could not reasonably infer malice, bad faith, wantonness, or recklessness into the actions of Defendant Burns.  Therefore, Defendant Burns's motion for summary judgment based on statutory immunity with respect to Davis's assault and battery claim is granted.

**G.      Intentional Infliction of Emotional Distress**.[4]

---

[4]  In their Brief, the East Cleveland Defendants aver that Davis has alleged a cause of action for "reckless infliction of emotional distress," but argue that no such cause of action exists under Ohio law.  (Defs.' Br. at 28).  Under Ohio law, "reckless infliction of emotional distress" is the same cause of action as "intentional infliction of emotional distress" and not a separate and distinct cause of action.  *See Russ v. TRW, Inc.*, 59 Ohio St. 3d 42, 48-49 (Ohio 1991) ("[T]his court has recognized the torts of intentional *or* reckless infliction of emotional distress in *Yeager v. Local Union 20*, *supra*, **and** negligent infliction of emotional distress in *Schultz v. Barberton Glass Co.*, *supra*.") (emphasis added); *see also Reamsnyder v. Jaskolski*, 10 Ohio St. 3d 150, 152, 462 N.E.2d 392 (Ohio 1984) ("The intentional or reckless infliction of emotional distress is an independent tort which does not require an underlying tort for an injured party to recover."). Therefore, these two claims will be analyzed as one.

Under Ohio law, a plaintiff who asserts a claim for intentional infliction of emotional distress must demonstrate that: (1) the defendant either intended to cause emotional distress, or knew or should have known that its actions would result in serious emotional distress; (2) defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency, and would be considered utterly intolerable in a civilized community; (3) defendant's actions proximately caused injury to plaintiff; and (4) the mental anguish plaintiff suffered is serious and of such a nature that no reasonable person could be expected to endure. *See, e.g., Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359, 588 N.E.2d 280 (Ohio 1990); *Jackson v. Saturn of Chapel Hill, Inc.*, 2005-Ohio-5302, 2005 Ohio App. LEXIS 4821 at ¶23 (Ohio Ct. App. 2005); *Buckman-Peirson v. Brannon*, 159 Ohio App. 3d 12, 18 (Ohio Ct. App. 2004) ("plaintiff in a case for intentional infliction of emotional distress must present some evidence beyond the plaintiff's own testimony that he or she has experienced emotional distress due to the defendant's actions.").

While "expert medical testimony" is not mandatory to succeed on a claim of serious emotional distress, "as an alternative and in lieu of expert testimony, a plaintiff may submit the testimony of lay witnesses who are acquainted with the plaintiff as to any 'marked changes in the emotional or habitual makeup' of the plaintiff following a defendant's allegedly culpable conduct." *Jackson*, 2005-Ohio-5302 *quoting Powell v. Grant Med. Ctr.* (2002), 148 Ohio App.3d 1, 6, 2002-Ohio-443, 771 N.E.2d 874.  Davis claims that he has problems dealing with how he was treated, and that he has trouble sleeping due to nightmares about the night of his arrest.  (Davis Depo. at 165-168).  He also testified that he is under the care of a psychiatrist and sees him about twice a month. (Davis Depo. at 165-166).  He stated that he is currently

29

prescribed Prozac and Buspar for anxiety and stress stemming from the night of his arrest.

(Davis Depo. at 166).  However, Davis has not provided any expert testimony, nor has he

provided the testimony of lay witnesses who know him and can testify to significant changes in

his emotional makeup.  The only testimony before the Court on this issue is that of Davis.  Based

on Ohio precedent, the Court finds that Davis's testimony, standing alone, is insufficient as a

matter of law for maintaining a cause of action alleging intentional or reckless infliction of

emotional distress.  Therefore, summary judgment on this claim is granted in favor of all

Defendants.

## IV.  CONCLUSION

For the foregoing reasons, the East Cleveland Defendants' Motion For Summary

Judgment is GRANTED in part and DENIED in part.  The following claims remain:

- § 1983 claim alleging Fourth Amendment violation for excessive use of force during Davis's arrest against Defendant Hicks;

- § 1983 action alleging Fourteenth Amendment violation stemming from the allegation of excessive force during Davis's detention against Defendants Hicks and Stanford only;

- conspiracy to violate Davis's constitutional rights under § 1983 against Defendants Hicks and Stanford; and

- an assault and battery action against Defendants Hicks and Stanford.

Summary judgment is GRANTED in favor of Defendants on all other claims.

IT IS SO ORDERED.

/s/Nancy A. Vecchiarelli
U.S. Magistrate Judge


DATE: March 21, 2006

30